## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| AFC Franchising, LLC, and Irwin Holdings, LLC. | Civil Action No. _____ |
| Plaintiffs, | |
| v. | |
| Fairfax Family Practice, Inc.<br>SERVE: Ahmad Fazal Nusrat, Registered Agent<br>334 Elden Street<br>Herndon, VA 20170<br><br>and<br><br>Ahmad Fazal Nusrat, individually<br><br>Defendants. | |

## COMPLAINT

This is an action for trademark infringement, unfair competition, and breach of contract arising out of the defendants' continued unauthorized use of the plaintiffs' trademarks, service marks, and franchise system in the operation of an urgent care center after the termination of the franchise agreement between the parties. The plaintiffs seek a declaratory judgment, damages, and preliminary and permanent injunctive relief.

The defendant Fairfax Family Practice, Inc. ("FFP") and its owner, the defendant Ahmad Fazal Nusrat ("Nusrat"), operated an AFC URGENT CARE center at 334 Elden Street, Herndon, VA, pursuant to a franchise agreement with the plaintiff AFC Franchising, LLC ("AFCF"), the franchisor of the AFC URGENT CARE system. AFCF uses and sublicenses service marks and intellectual property owned by the plaintiff Irwin Holdings, LLC ("Holdings") and licensed to

- 2 -

AFCF for use in the AFC URGENT CARE franchise system. In July 2018, AFCF placed the defendants in default on their obligations to pay royalties to ACFC in accordance with the terms of the franchise agreement. When the defendants failed to cure their default, AFCF exercised its contractual right to terminate the franchise agreement. Despite the termination of the franchise agreement, the defendants are continuing to operate an urgent care center under the name AFC URGENT CARE, to use .the AFC URGENT CARE proprietary marks and trade dress, and to their business out to the public as a legitimate, AFC URGENT CARE center. The exterior sign bearing the AFC URGENT CARE logo, a federally registered trademark, continues to be displayed. The defendants are currently answering their phone and advertising the name "A2Z", which is confusingly similar to AFC.

The defendants' continued operation of an urgent care center under the AFC URGENT CARE marks and marks confusingly similar to them poses a threat to the goodwill of AFCF and confusion of the public about the source and sponsorship of the urgent care services being offered by the formerly franchised center. Accordingly, the plaintiffs seek injunctive relief to protect the goodwill of the AFC URGENT CARE system and marks, as well as declaratory and monetary relief.

## THE PARTIES

1. The plaintiffs are each Alabama limited liability companies with their principal place of business in Birmingham, Alabama. The sole member of AFC is a citizen of Alabama, and the sole member of Holdings is a citizen of Florida.

2. The defendant FFP is a Virginia corporation with its principal place of business in Herndon, Virginia.

3. The defendant Nusrat is a citizen of Virginia, residing in Leesburg, Virginia

## JURISDICTION AND VENUE

4. This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and the contracts between the parties.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02 and 15 U.S.C. §§ 1116 and 1121.

6. This Court has jurisdiction over the defendants because they are citizens and residents of Virginia.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and to 28 U.S.C. § 1391(b)(2) because the defendants reside in this district and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## THE AFC URGENT CARE SYSTEM

8. AFCF operates and licenses others to operate urgent care centers under the service mark AFC URGENT CARE and related marks (the "AFC Marks"). Holdings owns the AFC Marks and licenses them to AFCF for use in the AFC URGENT CARE system.

9. The AFC Marks include the following Marks federally registered in the United States Patent and Trademark Office:

| *Reg. Number* | *Mark* |
|---|---|
| 4490730 | AFC BANDAGE DESIGN LOGO |
| 5476580 | AFC URGENT CARE AMERICAN FAMILY CARE |
| 5315442 | AFC AMERICAN FAMILY CARE THE RIGHT CARERIGHT NOW |
| 5315440 | AFC AMERICAN FAMILY CARE URGENT CARE |
| 5240938 | AFC URGENT CARE |

| *Reg. Number* | *Mark* |
|---|---|
| 5195152 | A F C URGENT CARE FAMILY CARE |
| 5175667 | AFC URGENT CARE |
| 5170540 | AFC URGENT CARE |

Each of these registrations is valid and fully enforceable.

10. The AFC URGENT CARE system consists of a method of operating and managing urgent and primary care centers. AFC URGENT CARE franchisees manage urgent care centers in accordance with the AFC URGENT CARE system, and enter into management agreements with professional entities that provide medical services. The franchise provides management and administrative services in accordance with the AFC URGENT CARE system to support the delivery of urgent care services. There are currently 135 centers operating under the AFC Marks in the United States.

### THE FRANCHISE AGREEMENT BETWEEN THE PARTIES

11. On June 12, 2014, AFCF and FFP entered into a Franchise Agreement (the "Franchise Agreement") pursuant to which FFP was authorized to use the AFC Marks to operate an AFC Urgent Care Center. A true and correct copy of the Franchise Agreement accompanies this Complaint as Exhibit 1.

12. Pursuant to Section 1.1 of the Franchise Agreement, unless earlier terminated, FFP was authorized to own and operate an urgent care management business that would manage an urgent care center under the AFC Marks at a particular location for a term of fifteen (15)

years. That location was subsequently determined to be 334 Elden Street, Herndon, VA 20170 (the "Franchised Premises").

13. Pursuant to Section 3 and Exhibit A of the Franchise Agreement, FFP had certain payment obligations to AFCF. These obligations include a royalty fee equal to six percent (6%) of the Net Collections (as defined in the Franchise Agreement) and paid on a weekly basis, via electronic debit.

14. Pursuant to Sections 3.4, FFP was required to pay interest on past due amounts in the amount of 1.5% per month.

15. Pursuant to Section 14.2 of the Franchise Agreement, if FFP defaulted on its payment obligation to AFCF, and failed to cure that default within five (5) days after notice of the default, AFCF had the right to terminate the Franchise Agreement immediately and without further notice.

16. The defendant Nusrat executed a personal guaranty of every "undertaking, agreement, and covenant) of the franchisee under the Franchise Agreement, and to be "personally liable for the breach of, each and every provision in the [Franchise] Agreement . . . ." The Guaranty and Assumption of Obligations can be found at Exhibit E to the Franchise Agreement.

### FFP'S DEFAULTS AND THE
### TERMINATION OF THE FRANCHISE AGREEMENT

17. FFP has been in arrears on its obligations to pay royalties on many occasions.

18. On July 17, 2018, AFCF sent FFP and Nusrat, by certified mail and email, a Notice of Default (the "Notice of Default") to the address for notice listed in the Franchise Agreement. A true and correct copy of the Notice of Default accompanies the Complaint as Exhibit 2. The Notice of Default advised FFP that it was in default under the Franchise

Agreement for failing to pay amounts owed to AFCF and for blocking AFCF's access to the required electronic debit.  Although only five (5) days' notice was required under the Franchise Agreement, AFCF afforded the defendants thirty (30) days' notice to cure.

19. The defendants did not cure their defaults within thirty (30) days or at any time. Accordingly, on August 29, 2018, AFCF sent FFP and Nusrat, by certified mail and email, notice that the Franchise Agreement would terminate if the past due amounts referenced in the Notice of Default were not cured within five (5) days (the "Notice of Termination").  A true and correct copy of the Notice of Termination accompanies this Complaint as Exhibit 3.

20. FFP and Nusrat did not cure their defaults under the Franchise Agreement.

## THE DEFENDANTS' BREACH OF THE POST-TERMINATION PROVISIONS OF THE FRANCHISE AGREEMENT AND UNAUTHORIZED USE OF THE AFC MARKS

21. Despite the termination of the Franchise Agreement, the defendants are continuing to operate an urgent care center at the Franchised Premises using the AFC Marks. This conduct is in breach of the post-termination provisions of the Franchise Agreement. Pursuant to Section 15 of the Franchise Agreement, FFP agreed that upon termination of the Franchise Agreement, it would take certain steps.  These steps included, without limitation, that: (1) FFP would immediately discontinue all use of the AFC Marks, or "any colorable imitation of a Mark…or any trade name, trade or service mark, or other commercial symbol that indicates or suggests a connection or association with us" (Ex. 1 § 15.2(a)); (2) FFP would within thirty (30) days return to AFCF "all signage, marketing materials, forms, and other materials containing any Mark…" (Ex. 1, § 15.2(c)); and (3) FFP would immediately cease using any confidential information, including without limitation computer software and similar technology, client and patient lists, the AFC URGENT CARE Manual, and any other confidential information provided by AFCF.

22. In addition, FFP agreed in Section 15.4 of the Franchise Agreement that, for a period of two (2) years following termination of the Franchise Agreement, FFP would not open or operate a Competitive Business, as defined in the Franchise Agreement, at the Franchised Premises.

23. As a consequence of the valid termination of the Franchise Agreement, FFP is required to abide by the post-termination obligations in the Franchise Agreement.

24. By letter dated September 18, 2018, counsel for AFCF demanded that FFP comply with the post-termination obligations contained in the Franchise Agreement, and attached a copy of the provisions of the Franchise Agreement that constituted those obligations. A true and correct copy of the September 18, 2018 letter accompanies the Complaint as Exhibit 4.

25. Despite AFCF's demands, FFP and Nusrat are continuing to operate the formerly franchised urgent care center at the Franchised Premises using the AFC Marks and trade dress, are advertising and holding themselves out to the public asan AFC URGENT CARE center and are continuing to use AFCF's confidential information in the operation of an urgent care center at the Franchised Premises.  They have returned no signage or other materials bearing the AFC MARKS; indeed, they are continuing to display the AFC URGENT CARE signage at their urgent care center.  In recent days, AFCF has learned that the defendants are now answering their phone "A2Z", and have posted advertising online using that designation.

26. The defendants' failure to abide by the post-termination obligations required under the Franchise Agreement and continued use of the AFC Marks, and other confidential and proprietary information belonging to AFCF in connection with the operation of an urgent care

center at the site of the formerly licensed center, has caused, and is continuing to cause, irreparable harm to the plaintiffs.

## COUNT ONE

**(Declaratory Judgment: Termination of the Franchise Agreement)**

27. AFCF realleges every other paragraph of this Complaint.

28. FFP has repeatedly defaulted in its obligations under the Franchise Agreement.

29. AFCF has provided FFP with written notice of its default and opportunity to cure in compliance with the provisions of the Franchise Agreement.

30. FFP failed to cure its defaults within the time periods specified in the Franchise Agreement or at any time.

31. Because FFP has failed to cure its defaults within the period of time set forth in the Franchise Agreement or at any time, AFCF had the right to terminate the Agreement and did so. Notwithstanding, the termination of its license to do so, FFP has continued to use the AFC Marks and to operate an urgent care center at the Franchised Premises.

32. An actual and justiciable controversy exists between AFCF and FFP regarding the termination of the Franchise Agreement because AFCF asserts that the Franchise Agreement has terminated as a result of FFP's defaults and failure to cure those defaults. On information and belief, FFP disputes that the Franchise Agreement has terminated, as evidenced by its continued operation of an urgent care center using the AFC Marks.

33. Pursuant to 28 U.S.C. §§ 2201 and 2202, AFCF seeks a declaratory judgment that the Franchise Agreement has validly terminated in accordance with the provisions of that Agreement.

## COUNT TWO

### (Breach of Contract - Franchise Agreement)

34. AFCF realleges every other paragraph of this Complaint.

35. FFP's failure to pay royalty fees and interest on past-due amounts constitutes a breach of the Franchise Agreement.

36. AFCF has been damaged by FFP's breach of the Franchise Agreement in an amount to be proved at trial, but not less than $13,062.18, plus interest.

## COUNT THREE

### (Breach of Contract - Post-Termination Obligations)

37. AFCF realleges every other paragraph of this Complaint.

38. Despite the valid termination of the Franchise Agreement, FFP has failed to close and de-identify the urgent care center at the Franchised Premises. Instead, FFP has continued to operate an urgent care center utilizing the AFC Marks in a manner likely to cause confusion or to deceive and which falsely suggests an association or connection with AFCF that FFP is operating a duly licensed AFC URGENT CARE center, all in violation of Section 15 of the Franchise Agreement.

39. FFP has also breached the Section 15 of the Franchise Agreement by continuing to use signage, marketing materials, and other materials displaying or associated with the AFC Marks.

40. FFP has also breached Section 15 of the Franchise Agreement by using and failing to return AFCF's confidential information, client and patient lists, and the AFC URGENT CARE Manual after termination of the Franchise Agreement.

41. FFP has also breached Section 15 of the Franchise Agreement by using a colorable imitation of the AFC Marks in connection with the operation of an urgent care center at the Franchised Premises.

42. The conduct set forth herein has caused and continues to cause irreparable harm and damage to AFCF and the AFC URGENT CARE system.

43. In addition, AFCF has sustained actual damages, costs, and attorneys' fees as a result of FFP's breach of the contractual post-termination obligations in an amount that has yet to be determined.

## COUNT FOUR

**(Breach of Contract – Lost Future Royalties)**

44. AFCF realleges every other paragraph of this Complaint.

45. As a result of FFP's default of its payment obligations under the Franchise Agreement and the termination of the Franchise Agreement, FFP is in breach of its obligation to pay AFCF a minimum monthly royalty fee for the full term of the Franchise Agreement, which was due to expire in June 2029.

46. AFCF has been damaged by FFP's breach of the Franchise Agreement in an amount to be proved at trial.

## COUNT FIVE

**(Declaratory Judgment – Post-Termination Covenant Not To Compete)**

47. AFCF realleges every other paragraph of this Complaint.

48. In Section 15.4 of the Franchise Agreement, FFP agreed not to operate an urgent care center at the Franchised Premises, among other places, for a period of two (2) years after

termination of the Franchise Agreement. The restrictions contained in Section 15.4 are reasonable.

49. FFP and Nusrat are continuing to operate an urgent care center at the Franchised Premises after the termination of the Franchise Agreement.

50. An actual and justifiable controversy exists between AFCF and FFP regarding whether or not FFP's operation of an urgent care center at the Franchised Premises would constitute a breach of Section 15.4 of the Franchise Agreement.

51. Pursuant to 28 U.S.C. §§ 2201 and 2202, AFCF seeks a declaration that the continued operation of an urgent care center at the Franchised Premises constitutes a "similar business" and a breach of the Franchise Agreement.

### COUNT SIX

**(Trademark, Service Mark and Trade Dress Infringement)**

52. The plaintiffs reallege every other paragraph of this Complaint.

53. FFP's and Nusrat's use of the AFC Marks and marks confusingly similar to the AFC Marks without authorization or license from the plaintiffs is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the AFC Marks.

54. Consumers are likely to believe, contrary to fact, that FFP and Nusrat are authorized franchisees of the AFC URGENT CARE system; that the urgent care center is a legitimate AFC URGENT CARE center; and that the services being offered by FFP and Nusrat are sponsored or authorized by the plaintiffs.

55. FFP and Nusrat are willfully, intentionally, and knowingly using trademarks, service marks, trade dress and designations that are identical to, substantially indistinguishable

from, or confusingly similar to the AFC Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

56. Nusrat is causing FFP to engage in this infringing activity and, to the extent not directly liable, is a contributory infringer in violation of the Lanham Act.

57. The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

58. In addition, the defendants' conduct is causing monetary damage to the plaintiffs in an amount to be proved at trial.

## COUNT SEVEN

### (Federal Unfair Competition)

59. The plaintiffs reallege every other paragraph of this Complaint.

60. The defendants' unauthorized use of the AFC Marks and trade dress, marks confusingly similar to the AFC Marks, and holding themselves out as duly licensed AFC URGENT CARE franchisees, and representing to the public that they are providing services authorized by the AFC URGENT CARE system constitute false designation of origin, false advertising, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between the defendants and the AFC URGENT CARE system, or as to the origin, sponsorship, or approval of the goods or services being offered by the defendants, or as to the plaintiffs' approval of the defendants' commercial activities.

61. The defendants' conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

62. Nusrat is causing FFP to engage in this activity and, to the extent not directly liable, is liable to the same extent as FFP under the Lanham Act.

63. The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

64. In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial.

## COUNT EIGHT

**(State Law, Trademark and Service Mark Infringement)**

65. The plaintiffs reallege every other paragraph of this Complaint.

66. The AFC Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the AFC Marks as identifying the services offered in the AFC URGENT CARE system.

67. The public is likely to be confused, deceived, or otherwise manipulated by the defendants' unauthorized use of the AFC Marks and marks confusingly similar to them. Therefore, the defendants' use of the AFC Marks without right, license, or authorization constitutes trademark and service mark infringement under the laws of the Commonwealth of Virginia.

68. Nusrat is causing FFP to engage in this infringing activity and, to the extent not directly liable, is liable to the same extent as FFP for this infringing activity.

69. The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

70. In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial.

## COUNT NINE

### (State Law Unfair Competition)

71. The plaintiffs reallege every other paragraph of this Complaint.

72. The defendants' conduct constitutes unfair competition under applicable state law.

73. Nusrat is causing FFP to engage in this activity and, to the extent not directly liable, is liable to the same extent as FFP for this activity.

74. The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

75. In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial.

## COUNT TEN

### (Unjust Enrichment)

76. The plaintiffs reallege every other paragraph of this Complaint.

77. The defendants' unauthorized use of the AFC Marks in operating an urgent care center at the Franchised Premises and holding themselves out as duly licensed AFC URGENT CARE franchisee has resulted in the unjust enrichment of the defendants in an amount that has yet to be determined.

## COUNT ELEVEN

### (Attorneys' Fees)

78. The plaintiffs reallege every other paragraph of this Complaint.

79. Section 17.3 of the Franchise Agreement requires FFP to reimburse AFCF for all costs, including reasonable attorneys' fees, incurred as a result of FFP's failure to comply with any provision of the Franchise Agreement.

80.     In addition, the Lanham Act, 15 U.S.C. § 1117, requires an infringer to pay attorney's fees to a trademark owner in appropriate cases.

81.     The plaintiffs have incurred significant costs, including attorneys' fees, as a result of the defendants' failure to comply with the terms of the Franchise Agreement and violations of the Lanham Act.

82.     The defendants are required to pay the costs incurred by the plaintiffs, including without limitation, reasonable attorneys' fees, in an amount to be proven at trial.

## COUNT TWELVE

### (Action on Personal Guaranty)

83.     The plaintiffs realleges very other paragraph of this Complaint.

84.     Pursuant to the personal guaranty he executed, Nusrat is liable to the same extent as FFP for all of FFP's breeches of contract, statutory violations, and tortious activity alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiffs demand entry of judgment in their favor and against the defendants, jointly and severally, awarding the following relief:

1.     Declaring that the Franchise Agreement has terminated and that the termination of that Agreement was lawful and valid;

2.     Declaring that the defendants' operation of any urgent care center at the Franchised Premises constitutes a breach of the Franchise Agreement;

3.     Awarding AFCF the past due amounts owed under the Franchise Agreement in an amount to be proved at trial but, which amount is no less than $13,062.18, plus interest, under the terms of the Franchise Agreement through the date of entry of judgment;

4. Awarding AFCF its damages resulting from the defendants' breach of the post-termination obligations of the Franchise Agreement, in an amount to be proved at trial;

5. Preliminarily and permanently enjoining the defendants, and all those acting in concert or privity with any or all of them, including any of their agents, servants, employees, and attorneys, from:

    (a) using the AFC Marks, trade dress, and confidential information, in any manner whatsoever, including, without limitation, in connection with the advertising, promotion or sale of any service, and including, without limitation, all signs, furniture, fixtures, equipment, décor, advertising materials, stationery, forms, and any other articles that display the AFC Marks;

    (b) operating any business or selling any goods or services under the name AFC URGENT CARE or any other AFC Mark, or any mark confusingly similar to them, or operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that any business in which the defendants have any interest or connection is licensed by AFCF or otherwise associated with the AFC URGENT CARE urgent care system;

    (c) failing to make any changes and alterations to their formerly-franchised urgent care center necessary to distinguish them from the AFCT URGENT CARE system;

    (d) committing any other act that infringes the AFC Marks, trade dress, or confidential information or otherwise unfairly competes with AFC URGENT CARE or the AFC URGENT CARE system.

6. Ordering the defendants to file with the Court and serve on counsel for the plaintiffs, within five (5) calendar days after entry of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

7. Awarding, pursuant to 15 U.S.C. §1117, (a) the defendants' profits, (b) the plaintiffs' damages, and (c) the costs of the action or awarding the plaintiffs statutory damages pursuant to 5 U.S.C. § 1117(c);

8. Awarding the plaintiffs treble damages and attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

9. Ordering specific performance of the post-termination obligations in the Franchise Agreement;

10. Awarding the plaintiffs the amount by which the defendants have been unjustly enriched by their conduct;

11. Awarding AFC URGENT CARE its costs in prosecuting these claims, including its reasonable attorneys' fees incurred, in accordance with the Franchise Agreement and applicable law; and

12. Such other and further relief as the Court may deem appropriate.

                                          Respectfully submitted,

                                          /s/ James C. Rubinger
                                    James C. Rubinger (VA Bar No. 20317)
                                    PLAVE KOCH PLC
                                    12005 Sunrise Valley Drive, Suite 200
                                    Reston, Virginia 20191
                                    703-774-1200 (phone)
                                    703-774-1201 (fax)
                                    jrubinger@plavekoch.com

                                    *Attorneys for the Plaintiffs*

October 31, 2018